## WOOD v. WEIMAR.

1. In Michigan, replevin will lie at the suit of the mortgagee of personal chattels against an officer who, by virtue of an attachment sued out against the mortgagor, levied upon them while they were in his possession, and who, when they are properly demanded, refuses to surrender them to the mortgagee.

2. Such a mortgage, executed in good faith to secure the amount actually due upon what was deemed to be valid and subsisting obligations, will be upheld and enforced, although the several items which make up that amount are not set forth; provided that subsequent creditors have not been injured by the want of specifications, and the proofs, which are adduced to establish the identity of the debt, show that it comes fairly within the general description.

3. An unrecorded mortgage is not, by the laws of Michigan, rendered void as to creditors, although the mortgaged goods remained in the possession of the mortgagor, if before the expiration of twelve months from its date they were replevied by the mortgagee, who thereafter retained the possession of them.

4. Where the interest on a certain mortgage debt was paid, and the assignee took from the debtor other notes for that interest which were secured by another mortgage, the latter cannot, as to them, avail against attaching creditors.

5. Where the objection to the admissibility of a deed offered in evidence was grounded on its irrelevancy, no question as to the form of its authentication will be considered here.

6. Where, after replevin by the mortgagee, payments were made on the mortgage debt, he cannot enforce his lien on the mortgaged chattels or their value beyond the amount actually due him when judgment is rendered.

7. Where the payee of a note dies, and no administration is granted on his estate, and there are no creditors, his distributees may transfer the note so as to vest in the assignee the equitable title thereto.

ERROR to the Circuit Court of the United States for the Western District of Michigan.

The facts are stated in the opinion of the court.

*Mr. L. D. Norris* for the plaintiff in error.

*Mr. Edward Bacon* and *Mr. George M. Lawton* for the defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This was a suit in replevin begun by Wood, the mortgagee of a stock of goods in a hardware store at St. Joseph, Michigan, against Weimar, a sheriff, who had seized the mortgaged property under certain writs of attachment, issued by the Circuit Court of Berrien County, Michigan, against Charles A. Stewart, the mortgagor. The case was tried by the court under a stipulation of the parties waiving a jury, and comes here on the facts and a bill of exceptions. The facts are very inartificially presented; a part appearing in the findings of the court incorporated into the opinion of the judge and mixed up with his reasoning in deciding the case, and the rest in two stipulations filed in the progress of the trial, one of which was omitted from the record as originally sent here, but has been brought up since. An objection is made to our considering these stipulations; but we think the case stands upon agreed statements as to part of the facts and findings as to the rest.

The facts thus appearing material to the questions presented by the assignments of error may be stated as follows: —

On the 25th of May, 1875, Stewart mortgaged his stock of goods to Wood to secure the payment of a debt of $10,465.46, and interest, on or before Nov. 25, 1875. This was done in good faith and without any intention to hinder or defraud cred-

itors. The mortgage was filed in the town-clerk's office the day it was executed, in accordance with the requirements of the Michigan statute. The mortgaged property remained in Stewart's possession after the mortgage, and he continued his sales from the stock in the usual course of business. There was no express agreement between the parties that this might be done, neither was it prohibited. The mortgage contained the usual power of sale in case of default, and authorized the mortgagee to take possession at any time, if he deemed himself insecure.

The mortgage purported on its face to be executed to secure a debt owing to Wood. The debt was represented by seven notes, none of which were described. Of these notes, five only actually belonged to Wood. The five all bore date May 25, 1875, the same as the mortgage, and were payable to Wood's order. One for $1,263.43, payable one month after date, with interest at ten per cent, and another for $250, also payable one month after date, with interest from June 22 at ten per cent, were taken in good faith for interest supposed to be past due on a mortgage of lands in Berrien County for $5,000, dated Dec. 22, 1868, and payable in five years, executed by Stewart to one Terwilliger. This mortgage, together with the note it secured, Wood bought in good faith, supposing it to be valid and subsisting, on the first day of May, 1875, after its maturity, and paid for it $5,000 and accrued interest. Both the note and mortgage were delivered to him when his purchase was made, and he had them with him at the time the chattel mortgage was taken. Stewart gave the notes to Wood under the impression that he owed the interest they represented, and the transaction securing their payment by the chattel mortgage was in entire good faith.

Full payment of interest to June 22, 1872, was indorsed on the Terwilliger note on the 29th of August of that year. On the next day, the 30th of August, Terwilliger released twenty acres of land covered by the mortgage; and on the 19th of October afterwards there was recorded in the records of Cook County, Illinois, what purported to be a deed, with covenants of warranty, except as to certain incumbrances, dated Sept. 21, 1872, and executed by Charles A. Stewart to Terwilliger, conveying one undivided half of certain lands in Chicago, " in

consideration of the sum of five thousand dollars, which is paid by way of the release of a mortgage for that sum, recorded in liber No. 4 of mortgages, in the office of the register of deeds of Berrien County, . . . the receipt whereof is hereby acknowledged." There was no other evidence except the record tending to show that this deed was ever delivered to Terwilliger, or that he knew of its being recorded. Wood had no knowledge of the deed when he bought the mortgage. The note was never surrendered to Stewart, and the mortgage was never-discharged on the records of Berrien County. When Wood took the chattel mortgage he understood that Terwilliger claimed to own an interest in the Chicago lands in common with Stewart; and on the 27th of May, two days after the chattel mortgage was executed, Stewart made another deed to Terwilliger for an undivided half of the Chicago lands, which he delivered to Wood as agent for Terwilliger. In connection with these facts, the court below said in its findings : " But although there is some confusion about the facts as to whether the mortgage debt of $5,000 was understood by Stewart and Terwilliger as having been paid, on the whole evidence it should be regarded as paid as to creditors."

To prove the deed from Stewart to Terwilliger, bearing date Sept. 21, 1872, a copy from the records of Cook County, certified by the recorder under his seal of office, was offered in evidence. There was no other authentication. This deed was objected to, " for that it was incompetent, immaterial, and irrelevant." The objection was overruled and the deed admitted. Exception was taken, which was in due form embodied in a bill of exceptions and made part of the record.

As to two other of the notes to Wood, one for $800 and the other for $1,890, the first payable one month from date, with interest at ten per cent, and the other one month from date, with interest at the same rate after June 18, it was found that after the commencement of this suit Wood realized from other securities which he held for the payment of the debt of which these notes represented the interest, enough to satisfy both, less the sum of $477.

As to another note given to Wood for $669.91, payable in six months from date, no special facts are found.

The sixth note was for \$3,300, payable one day after date, Jan. 1, 1873, with interest at ten per cent, to the order of Elizabeth Stewart. The payee of the note had died intestate before the execution of the chattel mortgage, and no administrator had been appointed on her estate. She left no creditors, so far as the proof shows, but several heirs. One of the heirs was Cornelia Stewart, and all the others united in an assignment of this note to her. Wood was in some way related to Elizabeth and Cornelia Stewart, and Cornelia Stewart had indorsed the note to him to collect or get security. When he took the chattel mortgage he had the note and the assignment from the heirs in his possession. There was due on the note at the time \$4,092.12, and Charles Stewart wished to secure it by the chattel mortgage. What was done was for the benefit of Cornelia Stewart.

The seventh note belonged to Harriet A. Stewart; but upon this no questions arise here, as the judgment below was in favor of Wood for all he claimed.

When the attachments under which Weimar claims were put on the property, Charles A. Stewart was in possession. The attachment was not made subject to the chattel mortgage; and in the pleadings in this case it is insisted by the sheriff that the goods were not the property of Wood and that the chattel mortgage was without consideration, and void as to creditors. The value of the property taken by the replevin was \$8,870.46.

The attachments were served on the 15th of July, and were for debts, amounting in all to \$7,601.77. On the 11th of October, 1875, Wood demanded the goods of the sheriff, who then had them in possession; but the delivery was refused. This suit was begun on the same day, but after the demand and refusal. Weimar at the trial waived a return to him of the goods, and prayed a judgment for their value.

Upon this state of facts the court below ruled —

1. That replevin would not lie in favor of a mortgagee against a sheriff for personal property covered by a chattel mortgage, seized under an attachment against the mortgagor, while the mortgagor was in possession, and that consequently

Weimar was entitled to a judgment, the only question being as to the amount of his recovery;

2. That Wood could claim nothing under the chattel mortgage on account of the notes given for what was believed to be past due interest on the Terwilliger debt;

3. That his lien on account of the two notes of $800 and $1,890 could only be enforced for $477, the balance that remained due after deducting what had been realized from the proceeds of other securities since this suit was begun; and —

4. That he could claim nothing on account of the Elizabeth Stewart note, as, until administration on her estate, and distribution, her next of kin had no right or title to the note, legal or equitable, which they could convey for collection or otherwise, and that consequently there was no one capable of taking or holding security for it.

The result was that the lien of Wood, under his mortgage, was fixed at $3,295.36. This amount he was allowed to retain out of the value of the goods in his hands, and a judgment was given against him in favor of Weimar for the balance, being $5,575.10 and costs. To reverse this judgment against him the case has been brought here by Wood. The errors assigned present for our consideration the foregoing rulings below and the exception to the admission in evidence of the deed recorded in Cook County.

As to the right to bring an action of replevin. Practically this involves only a question of costs; for in the progress of the cause Wood was given the same kind of relief he would have been entitled to if the court had held that his suit was properly brought. By a statute of Michigan (C. L. of 1871, sect. 6754), "when either of the parties to an action of replevin, at the time of the commencement of the suit, shall have only a lien upon, or special property or part ownership in, the goods and chattels described in the writ, and is not the general owner thereof, that fact may be proved on the trial, or on the assessment of value, or on the assessment of damages in all cases arising under this chapter; and the finding of the jury or court, as the case may be, shall be according to such fact, and the court shall thereupon render such judgment as shall be just between the parties."

Confessedly Wood was only a lien-holder. The goods were delivered into his possession under the writ, and their value was agreed on. Weimar did not ask their return, but was content with a judgment for the value of what had been wrongfully taken from him. His interest in the property was only that which the attaching creditors could subject to the payment of their debts. Another provision of the Michigan statutes is (id., sect. 6759), that "whenever the defendant shall be entitled to a return of the property replevied, instead of taking judgment for such return, . . . he may take judgment for the value of the property replevied, in which case such value shall be assessed on the trial, or upon the assessment of damages, as the case may be, subject to the provisions of section 29 of this chapter. Sect. 29, here referred to, is the same as sect. 6754, *supra.* As the court below found as a fact that Wood had a valid mortgage, it proceeded, notwithstanding the suit was improperly brought, to ascertain the amount and value of his lien and adjudge accordingly. This is all that could have been done if the ruling had been the other way upon the right to maintain the action.

If this were all there was in the case we should, under our uniform practice, decline to consider it. No writ of error lies from a judgment as to costs alone. *Canter* v. *American and Ocean Insurance Companies,* 3 Pet. 307 ; *Elastic Fabrics Company* v. *Smith,* 100 U. S. 110. But there are other questions, and this may, therefore, properly be taken up. Since the judgment below, the Supreme Court of Michigan has held, in *King* v. *Hubbell* (42 Mich. 597) that although goods mortgaged could be taken under an attachment if in the possession of the mortgagor, the officer must surrender them to the mortgagee on demand, after his inventory and appraisement have been completed, unless the attaching creditors dispute the validity of the mortgage. This clearly implies that replevin will lie if a delivery to the mortgagee is refused when properly demanded. We hold therefore, on the authority of that case, that there was error in deciding that the action was improperly brought.

Before taking up the questions arising on the assessment of damages, it is necessary to consider some objections which

have been urged to the mortgage. It has been found as a fact that the mortgage was executed in good faith to secure what were supposed at the time to be valid and subsisting obligations, and with no intent to defraud other creditors. We are therefore to enter on our enquiries with this established. It is insisted, however, that notwithstanding the good faith of the parties, the mortgage is invalid, because it does not truth-fully describe the indebtedness secured. It is conceded. that the real transaction was not set forth in detail. The amount of the indebtedness the parties intended to secure is correctly stated, though the several items which made it up are not specified. They were, however, identified at the trial, and the honesty of the transaction established. In *Shirras* v. *Caig* (7 Cranch, 34), where a mortgage purported to secure a debt of £30,000, due to all the mortgagees, but was in fact intended to secure different sums due at the time to particular mort-gagees, and advances afterwards to be made and liabilities to be incurred to an uncertain amount, Mr. Chief Justice Marshall said : " It is not to be denied that a deed which misrepresents a transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a rigorous ex-amination. It is, certainly, always advisable fairly and plainly to state the truth. But if, upon investigation, the real trans-action shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and un-precedented to deprive the person claiming under the deed of his real equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresenta-tion." Here it has been found that all was fair. It was material for creditors to know the amount of the indebtedness secured, and the property covered. These are truly stated. To enforce his mortgage, the mortgagee must prove his debt, and he can recover only to the extent of what he proves. If the items which make up the debt are particularly described in the mortgage, it may save trouble in establishing the facts ; but if there has been no fraud, and subsequent creditors have not been injured by the omission of specifications, identity may be established by parol. In making the proof, the debt must come fairly within the general description which has been

given; but if it does, and the identity is satisfactorily made out, the mortgage will be sustained where good faith exists.

It matters not in this case that the notes actually intended to be secured became due at different dates, and not at the time fixed by the mortgage. Suits might be brought on the notes when they matured, for the recovery of the debt; but the mort- gage could only be enforced according to its terms. Possession might be taken under the mortgage when necessary for the preservation of the security; but no sale of the mortgaged prop- erty could be made until after the condition was broken; that is to say, until after a failure to pay on the 25th of November.

It is also claimed that the lien of the mortgage was lost after the suit was begun, because of a failure to comply with the requirements of the recording acts. These acts prescribe that where mortgages of chattels are not accompanied by imme- diate delivery and followed by an actual and continued change of possession, they shall be void as against creditors and subse- quent purchasers in good faith, unless copies are filed in the proper office. Another provision is that every such mortgage shall cease to be valid as against creditors and subsequent pur- chasers or mortgagees in good faith, after the expiration of one year from the filing, unless within thirty days next preceding the expiration of the year, the mortgagee, his agent or attorney, shall annex to the instrument on file an affidavit setting forth the interest which the mortgagee has, by virtue of his mortgage, in the property mortgaged. The goods in this case were re- plevied before the year expired, and while the mortgage was in full force under the recording acts. The possession of the property was then taken by Wood. After that the recording acts did not apply, unless the property was again put into pos- session of the mortgagor. Nothing of this kind appears in the findings, and the presumptions are all the other way. We conclude, therefore, that at the time of the replevin the lien of the mortgage was valid and subsisting to the extent of the debt secured by it as established by the findings.

This brings us to the questions arising on the assessment of damages.

1. As to the notes given for the interest on the Terwilliger mortgage. The court found as a fact that the Terwilliger note was

"paid as to creditors." By this we understand that, as between Stewart and Terwilliger, the debt had been satisfied, and that there was consequently no consideration for the interest notes given Wood. Such being the case, he could not enforce those notes against creditors. Although Stewart might, if he saw fit, recognize the debt in the hands of Wood, and pay it if the rights of creditors did not intervene, as against creditors an agreement to pay would not be binding. The court has found the transaction fair and *bonà fide* as between Wood and Stewart. This saves the mortgage as to the remainder of the indebtedness secured, but does not make the notes themselves of any avail against the attaching creditors. We cannot consider the evidence on which this finding was made. That was the province of the court below.

In this connection it is proper to consider the exception which was taken to the introduction in evidence of the deed from Stewart to Terwilliger. The language of the exception, as recorded in the bill of exceptions, is as follows: "To the reading in evidence of which deed, plaintiff, by his counsel, objected, for that it was incompetent, immaterial, and irrelevant." It is now insisted that "the attestation of the recorder of deeds of the correctness of the transcript was not certified to be in due form, and by the proper officer, as required by the act of Congress of March 27, 1804, prescribing the mode in which the public records in each State shall be authenticated, so as to take effect in every other State." This was not the objection made below, and it comes too late here. There the attention of the court was called only to the competency, materiality, and relevancy of the deed; here to the form of the authentication of the copy. The rule is universal that nothing which occurred in the progress of the trial can be assigned for error here, unless it was brought to the attention of the court below, and passed upon directly or indirectly. It is clear that the ruling complained of in this case was in respect to the effect to be given the deed when proved, and not to the form of making the proof. We see no error in the judgment below as to this item in the claim for allowance under the mortgage.

2. As to the notes of $800 and $1,890. It is insisted by Wood that collections made by him on the mortgage debt since

the commencement of the suit cannot be taken into account in stating the amount of his lien ; and, if they could, that what was realized by him from his other securities should be applied on the principal of the debt rather than on these notes, which represent only the interest. Wood ought not to be permitted to enforce his lien on the goods he holds, or their value, beyond the amount which is actually due him on the mortgage debt when the judgment is rendered. The judgment must be such as shall " be just between the parties." If, when the suit was begun, his lien was equal to the full value of the property, and it was reduced by payment afterwards, he must account in the judgment for what is left after his debt is eventually satisfied, but will be protected in respect to costs.

From the finding it may fairly be inferred that the entire debt, principal and interest, was paid from the proceeds of the other securities, except the sum of $477. Certainly there is nothing inconsistent with such a presumption. Before a judgment can be reversed because it is not supported by the findings, the error must be apparent. All intendments are in favor of what has been done. This assignment of error has not been sustained.

3. As to the Elizabeth Stewart note. The court has distinctly found that this was a valid debt, which Charles A. Stewart wished to have secured by the chattel mortgage. There was no fraud intended; but, on the contrary, everything was done in good faith. Inasmuch, however, as Mrs. Stewart was dead and no administration had been granted on her estate, it was decided that Wood had no lien on the property for the security of this note. In this we think there was error. There can be no doubt, from the facts as found, that in equity the debt was owing to Cornelia Stewart. There were no creditors, and all who would have been distributees under an administration of the estate of Elizabeth Stewart had assigned to her their interest in the note. This assignment, with the necessary authority from Cornelia Stewart, Wood had in his possession. There can be no doubt that if Charles Stewart had taken up the old note, and given another to Wood or Cornelia Stewart in its place, the new note would have been good as against every one but a creditor of Mrs. Stewart. So, too, if he had

actually paid the debt instead of securing it, his creditors could not complain. Such being the case, we do not see why the security he gave may not be enforced. He owed the debt and had the right to provide for it without waiting for administration on the estate of Mrs. Stewart, if it could be done with safety. Of that he was to judge, if he acted in good faith, and not his creditors. All they can ask is that his property shall not be charged with its payment more than once. While, therefore, Wood, as the indorsee of Cornelia Stewart, may not have had the legal title to the note, he certainly held the equitable title, which Charles A. Stewart was at liberty to recognize if he would. Having recognized it in good faith and acted accordingly, his creditors cannot interfere. He was at liberty to select such trustee as he chose to hold the security he desired to give. If there was fraud or bad faith the case would be different. The court has found against any such claim, and in our judgment a valid lien was created on the property in favor of Wood for the benefit of Cornelia Stewart, whose interests he rightfully represented, and whose trustee he was.

The judgment will be reversed and the cause remanded, with instructions to enter a judgment in favor of Wood for the costs of the suit, and against him for only $1,482.98, the difference between the value of the mortgaged property and the amount due on the mortgage debt, including the amount adjudged in his favor below and the Elizabeth Stewart note; the judgment so to be rendered to bear interest from and after the 12th day of June, 1878, and it is

*So ordered.*

MR. JUSTICE GRAY took no part in deciding this case.